Raul Eulalio GARNICA–VASQUEZ

v.

Janet RENO, Attorney General; Doris Meissner, Commissioner, Immigration and Naturalization Service; and Immigration and Naturalization Service.

No. EP–98–CA–397–DB.

United States District Court,
W.D. Texas,
El Paso Division.

March 12, 1999.

Victor Salas, El Paso, TX, for plaintiff.

James W. Blagg, United States Attorney; Frank W. Hunger, Assistant Attorney General, Civil Division; David M. McConnell, Assistant Director; Jose J. Tavarez, Special Assistant United States Attorney; and Michelle E. Gorden, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, for defendants.

## *MEMORANDUM OPINION AND ORDER*

BRIONES, District Judge.

On this day, the Court considered Janet Reno, Attorney General; Doris Meissner, Commissioner, Immigration and Naturalization Service; and Immigration and Naturalization Service's (collectively, "Respondents") Motion to Dismiss filed on November 25, 1998, by leave of Court, in the above-captioned cause. Raul Eulalio Garnica–Vasquez ("Petitioner") filed his Response on January 7, 1999. After due consideration, the Court is of the opinion that the Motion should be granted for the reasons that follow.

## FACTS

Petitioner, a native and citizen of the Republic of Mexico, is a lawful permanent resident admitted to the United States in August 1962. On March 19, 1997, Petitioner pleaded guilty to the charge of indecency with a child in violation of Tex. Penal Code § 21.11(a)(1). Petitioner was granted deferred adjudication pursuant to Art. 42.12, Texas Code Crim.P. § 5, placed on community supervision for a period of eight years, and ordered to stay away from his victim.

On May 1, 1997, the Immigration and Naturalization Service ("INS") issued a Notice to Appear, thus commencing removal proceedings against Petitioner. The INS charged Petitioner as an aggravated felon subject to removal pursuant to the Immigration and Nationality Act of 1952 ("INA") § 237(a)(2)(A)(iii), and was taken into custody by INS.[1] Petitioner appeared before an immigration judge on July 7, 1997, on the removal charges and was ordered to be deported to the Republic of Mexico. The immigration judge also denied Petitioner's applications for cancellation of removal under INA §§ 240A(a) and 240A(b)(1), for a waiver under INA § 212, and for an adjustment of status under INA § 245.

Petitioner appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA"). Noting that it recently had held that a deferred adjudication under the same Texas code constituted a conviction for immigration purposes, the BIA concluded that Petitioner's deferred adjudication was a conviction under immigration law, that he was removable as charged, and dismissed his appeal. Petitioner then filed his Petition for Writ of Habeas Corpus and Complaint for Declaratory Relief on

---

1. On May 19, 1997, an immigration judge denied Petitioner's request for bond and ordered that he be detained by the INS without bond. On appeal, the Board of Immigration Appeals agreed with the immigration judge's determination that Petitioner failed to rebut the applicable statutory presumption that he presented a threat to others and dismissed the bond appeal.

September 24, 1998. The Court is now faced with a novel issue.

## DISCUSSION

Respondents argue that the Court lacks jurisdiction to review this matter under recent amendments to the INA. They further contend that even if the Court has jurisdiction, the scope of such jurisdiction does not encompass the merits of this cause. Finally, Respondents aver that the petition should be dismissed because it lacks merit. Petitioner counters that the recent amendments to the INA do not divest the Court of jurisdiction and that Respondents' interpretation of "conviction" is contrary to Fifth Circuit precedent. The Court addresses these arguments after outlining the applicable statutory framework.

### Statutory Background

Recently, Congress has taken dramatic steps in an attempt to limit the federal courts' jurisdiction over petitions for habeas corpus involving INS matters. To begin, Congress enacted the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") on April 24, 1996, which curtailed judicial review over deportation proceedings. Prior to the enactment of the AEDPA, however, judicial review of deportation orders typically proceeded by a Petition for Review of the INA decision filed in the court of appeals. *See Sandoval v. Reno,* 166 F.3d 225, 229 (3d Cir.1999). INA § 106(a)(10) also provided for review of a deportation order by way of a habeas corpus proceeding.

The INA statutory landscape changed significantly when AEDPA § 401(e) deleted INA § 106(a)(10), through AEDPA § 440(a). Section 440(a), codified at 8 U.S.C. § 1105a(a)(10), replaced INA § 106(a)(10) with the following language: "[a]ny final order of deportation against an alien who is deportable by reason of having committed a criminal offense [covered in the deportation provisions of the INA] shall not be subject to review by any court."

These provisions changed again several months later with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546 (1996) ("IIRIRA") on September 30, 1996.[2] The IIRIRA contains two different sets of rules: the permanent rules, which became effective on April 1, 1997, *see* IIRIRA § 309(a), and the transitional rules, which became effective on October 30, 1996. The transitional rules apply to aliens who were placed in removal proceedings before April 1, 1997.[3] Transitional rule IIRIRA § 309(c)(4)(G), provides in relevant part that,

> there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act), or any offense covered by section 241(a)(2)(A)(ii) of such Act (as in effect on such date) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 241(a)(2)(A)(I) of such Act (as so in effect).

Finally, IIRIRA § 306(a) amends INA § 242(g), codified in 8 U.S.C. § 1252(g) ("amended INA § 242(g)"), and provides that,

> [e]xcept as provided in this section and notwithstanding any other provision of

---

**2.** IIRIRA § 306(b) repealed 8 U.S.C. § 1105a as to deportation proceedings initiated on or after April 1, 1997. *See* IIRIRA §§ 306(b), (c), and 309. For such proceedings, the IIRIRA substitutes new judicial review provisions. *See* IIRIRA § 306(a).

**3.** Technical amendments enacted on October 11, 1997, Pub.L. 104–302, 110 Stat. 3656, 3657, clarify the permanent and transitional rules.

law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

Because removal proceedings against Petitioner began in May 1997 and the BIA's final order of deportation was entered in September 1998, the amended INA § 242(g) applies here.

The particular section of the IIRIRA at issue in this cause is § 322, IIRIRA § 101(a)(48)(A), codified in 8 U.S.C. § 1101(a)(48)(A) ("IIRIRA § 101(a)(48)(A)"). It provides as follows:

The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—

(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

IIRIRA § 101(a)(48)(A).

AEDPA § 440(a), IIRIRA transitional rule § 309(c)(4)(G), and amended INA § 242(g) purport to strip the Court's jurisdiction over deportation challenges. However, as explained below, the Court finds that it does have jurisdiction to review the matter now before it.

**Jurisdiction**

■ Respondent asserts that the IIRIRA deprives district courts from habeas jurisdiction to review Petitioner's challenges to his final order of deportation. *See* 8 U.S.C. § 1252(g). The Court does not agree.

Some six circuit courts have addressed the availability of habeas after the 1996 amendments. Four of the circuit courts have found jurisdiction under § 2241 while two others have not. For instance, in *Goncalves v. Reno*, 144 F.3d 110, 116 and n. 3, 123 (1st Cir.1998), a transitional rules case, the First Circuit reversed the district court's dismissal of an alien's habeas petition, finding that Congress did not eliminate habeas jurisdiction under § 2241 because Congress did not express an intent to do so. The *Goncalves* court followed *Felker v. Turpin*, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), in finding that "Congress neither explicitly nor by implication repealed the grant of jurisdiction in § 2241 to issue writs of habeas corpus to persons in federal custody which the federal district courts have had since 1789 and which has always been available in immigration cases." 144 F.3d at 113.

In *Henderson v. INS*, 157 F.3d 106, 122 (2d Cir.1998), another transitional rules case, the Second Circuit similarly affirmed the decisions of two district courts that found they had jurisdiction under § 2241 to grant writs of habeas corpus to deportable aliens. The Second Circuit relied on its earlier decision. *Jean–Baptiste v. Reno*, 144 F.3d 212, 220 (2d Cir.1998), in which it affirmed the dismissal of an alien's Petition for Review.[4] In *Jean–Baptiste*, the court held that the elimination of judicial review by the new amendments did not violate the Constitution because § 2241 habeas review remained. *See id.*

Likewise, in *Magana–Pizano v. INS*, 152 F.3d 1213, 1216 (9th Cir.1998) (per

---

4. In dictum, however, the Second Circuit expressed some reluctance in finding that district courts had jurisdiction under § 2241, as follows:

[w]ere we not bound by *Jean–Baptiste,* the members of this panel would be strongly inclined to find that the proper mechanism for judicial review is by petition for review in the courts of appeals, rather than by § 2241 habeas in the district courts. Neither approach is without problems in terms of the text and legislative history, but review in the courts of appeals seems more consistent with congressional intent.

*Henderson,* 157 F.3d at 119 n. 9.

curiam), also a transitional rules case, the Ninth Circuit held that the district court retained habeas jurisdiction under § 2241 to hear the claim of an alien who had committed a drug offense. Reasoning that if it read the IIRIRA as eliminating all judicial review of executive detention, such an interpretation would violate the Suspension Clause. *See id.* at 1220. The Ninth Circuit previously held in *Hose v. INS,* 141 F.3d 932, 936 (9th Cir.1998), that the IIRIRA eliminated district court jurisdiction to hear a habeas petition by an alien seeking to appeal an immigration judge's determination that he was excludable. The court noted that the Suspension Clause was not violated because Hose could have filed a Petition for Review in the court of appeals, an option not available to *Magana–Pizano. See id.* On December 2, 1998, the Ninth Circuit granted a rehearing en banc and *withdrew* the *Hose* opinion. *See Hose v. INS,* 161 F.3d 1225 (9th Cir.1998).

More recently, the Third Circuit in *Sandoval,* a transitional rules case. opined that district courts maintain § 2241 jurisdiction. There, the court concluded that § 2241 survives the 1996 amendments "because neither AEDPA nor IIRIRA contains a clear statement that Congress sought to eliminate habeas jurisdiction under 28 U.S.C. § 2241 . . . ." *Id.* at 238; *accord Henderson,* 157 F.3d at 120 n. 11; *Magana–Pizano,* 152 F.3d at 1221; *Jean–Baptiste,* 144 F.3d at 219; *Goncalves,* 144 F.3d at 123.

While the Court of Appeals for the District of Columbia has not addressed this issue, a district court in that circuit has held that the AEDPA and the IIRIRA do not deprive it of jurisdiction under 28 U.S.C. § 2241 to hear a claim by an alien. *See Lee v. Reno,* 15 F.Supp.2d 26, 37–40 (D.D.C.1998) (a transitional rules case).

On the other hand, two Courts of Appeals have concluded otherwise. In *Richardson v. Reno,* 1998 WL 850045 (11th Cir.1998), *opinion vacated and superseded,* 162 F.3d 1338, 1359 (11th Cir.1998), the Eleventh Circuit found that the amended INA § 242(g) eliminates habeas jurisdiction under § 2241 and does not violate the constitution. Although the petitioner in *Richardson* was an alien who was detained upon re-entry into the United States, and therefore the facts there were different, the case otherwise involved the same statutory provisions and similar legal principles.

After the Eleventh Circuit ruled in *Richardson,* the Seventh Circuit followed with *LaGuerre v. Reno,* 164 F.3d 1035 (7th Cir.1998). The Seventh Circuit agreed with the finding that AEDPA § 440(a) deprives the district courts of habeas jurisdiction with respect to the executive's detention of aliens who have been convicted of enumerated crimes. *See id.* at 1039. The court read the statute as allowing such aliens to bring constitutional challenges to their detention in the courts of appeals by way of a petition for review, in spite of the general bar to petitions for review in the AEDPA. The court adopted this construction because of a "presumption that executive resolutions of constitutional issues are judicially reviewable." *Id.* at 1040.

To be sure, the Fifth Circuit has suggested that some form of habeas review exists, but it is not clear if such review is proper under § 2241. See *Lerma de Garcia v. INS,* 141 F.3d 215, 217 (5th Cir.1998) (a transitional rules case) (noting that the Fifth Circuit has held that criminal deportees may apply for writs of habeas corpus); *Nguyen v. INS,* 117 F.3d 206, 207 (5th Cir.1997) (a transitional rule case) (same); *Williams v. INS,* 114 F.3d 82, 84 (5th Cir.1997) (an AEDPA § 440(a) case). Thus, the Fifth Circuit has recognized that "limited opportunity to apply for a writ of habeas corpus may remain" for aliens facing deportation. *Williams,* 114 F.3d at 84 (noting similar conclusions by the First, Second, Third, and Ninth Circuits). "[A]t a minimum," the Fifth Circuit has stated recently, such aliens may bring the writ protected by the Suspension Clause. *Id.*

All told, the Court finds the opinions of the First, Second, Third, and Ninth Circuits persuasive, because none of the 1996 amendments exhibit a clear intent to eliminate § 2241 jurisdiction from the district courts. Indeed, just because the cases discussed above are transitional rules cases or AEDPA cases does not mean that they are distinguishable from the case at hand—which falls under amended INA § 242(g), as to the jurisdictional issue. While amended INA § 242(g) language appears to be more restrictive than its counterpart in the AEDPA and the IIRIRA transitional rules, the Court finds that the outcome of a § 2241 jurisdictional analysis under the facts at hand is the same under any of these supposed jurisdiction-limiting provisions. *See Hilario Perez v. Reno*, 18 F.Supp.2d 674, 680 and n. 4 (W.D.Tex. 1998) (finding that the amended INA § 242(g) did not apply, but also indicating that "[w]hether new INA § 242(g) is applicable is inconsequential to the jurisdiction question at hand." (citing *Goncalves v. Reno*, 144 F.3d 110, 122 (1st Cir.1998))); *Farquharson v. INS*, 1999 WL 9662, *5 (D.N.J. Jan.6, 1999) (assuming that amended INA § 242(g) applies only because this section contains more restrictive language, reasoning that if the court finds it has jurisdiction under this section, which it did, then "jurisdiction most certainly exists under the arguably less stringent transitional provision"). Consequently, the Court holds that it does have jurisdiction, at most, under § 2241, and, at the very least, under the Suspension Clause, to review the matter at hand, so long as the issues for review lie within the jurisdiction's scope.[5]

**5.** If jurisdiction is proper under § 2241, then it certainly is proper under the Suspension Clause. Either way, the existence and bounds of the scope of such jurisdiction remains to be determined by the Supreme Court and the Fifth Circuit.

**6.** Because the Court finds that it retains some degree of jurisdiction under § 2241 and the

## Scope of Review

Having ruled that it has some degree of jurisdiction under § 2241 and, certainly, under the Suspension Clause to consider this matter, the Court must now address the scope of such jurisdiction.[6] Respondents mischaracterize Petitioner's requested relief as an attack on the BIA's final order of removal. Respondents, relying on amended INA § 242(g), contend that Petitioner should be seeking judicial review in the Fifth Circuit "of the only issue presented by the petition—whether [Petitioner] is deportable for having been 'convicted' of an aggravated felony." The Court does not agree with Respondents' characterization of Petitioner's claim. At its core, Petitioner's challenge goes to the INS' interpretation of a statute. The order of removal simply is a consequence of an alleged error in statutory interpretation.

Because the Fifth Circuit expressly has declined to establish the bounds of habeas review in the context of challenges to the AEDPA and the IIRIRA, it appears to be an open question in this circuit. *See Williams*, 114 F.3d at 84 (indicating that, "[h]owever, this case does not require us to explore the perimeters of judicial review remaining available"); *see also Humphries v. Various Federal USINS Employees*, 164 F.3d 936, 942 n. 6 (5th Cir.1999) (stating, "[w]e express no opinion on the extent to which other federal statutes (most notably 28 U.S.C. § 2241) might limit the application of [amended INA § 242(g) ]."). The Court, therefore, looks to other circuit courts for guidance.

Recently, the Third Circuit in *Sandoval*, a transitional rules case, ruled that § 2241 contemplates review of a statutory claim.

Suspension Clause, it does not reach the issue of whether it has jurisdiction under INA §§ 1101 et seq.; the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq.; 28 U.S.C. § 1331; the Declaratory Judgments Act, 28 U.S.C. §§ 2201 et seq.; the All Writs Act, 28 U.S.C. § 1651; and "the common law."

*See* 166 F.3d at 238. The court reasoned that the very language of § 2241 encompasses claims that one "is in custody in violation of the Constitution or law or treaties of the United States." *Id.; accord Henderson,* 157 F.3d at 122 (2d Cir.) (indicating that statutory claims "affecting the substantial rights of aliens of the sort the courts have secularly enforced" are reviewable on habeas); *Goncalves,* 144 F.3d at 124–25 (1st Cir.) (stating, "the pure statutory claims Goncalves makes here are well within precedent interpreting the core habeas protection provided by § 2241."). As the Court finds the reasoning in *Sandoval, Henderson,* and *Goncalves* compelling, it holds that the appropriate scope of review here encompasses at least review of the statutory merits of the instant petition—under either § 2241 or the Suspension Clause. *See Perez,* 18 F.Supp.2d at 682 (finding that *this Court* had jurisdiction to review the statutory merits of that case under the Suspension Clause). The Court further notes that this finding in no way should be construed as delineating the entire breadth of scope of review under § 2241 or the Suspension Clause.[7]

### "Deferred Adjudication"

Having found that the Court retains jurisdiction under § 2241 to review this matter, the Court reaches the merits. Respondents argue that Petitioner's deferred adjudication constitutes a conviction for immigration purposes. Respondents contend that Congress deliberately broadened the scope of the definition of a "convic-

tion," as enunciated by the BIA in *Matter of Ozkok,* 19 I & N Dec. 546, available at 1988 WL 235459 (BIA 1988), to negate the effect of various state ameliorative provisions that may follow a finding or admission of guilt and impose an alternative punishment, such as deferred adjudication.[8] Respondents assert that Congress has abolished the requirement that an adjudication be "final" and eliminated the third prong of the *Matter of Ozkok* definition of a conviction. On the other hand, Petitioner maintains that *Martinez–Montoya v. INS,* 904 F.2d 1018 (5th Cir.1990), is controlling precedent in this circuit, and that it mandates an outcome contrary to that urged by Respondents.

When ruling on an agency's construction of a statute, basic principles of statutory construction provide that courts first "must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781 and n. 9, 81 L.Ed.2d 694 (1984) (stating, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."). In determining a statute's plain meaning, a court should assume that "Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.' " *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 388, 113

---

7. The Court further agrees with the First Circuit's refusal to apply the very narrow standards of review to habeas petitions in the immigration context that are applied to review of federal and state court convictions under 28 U.S.C. §§ 2254 and 2255. *See Goncalves,* 144 F.3d at 124. "In cases concerning collateral review of state and federal convictions, a prisoner has already had substantial judicial review of his claims.... By contrast, no court, state or federal, has heard [the deportable alien's] claims." *Id.*

8. In *Matter of Ozkok,* the BIA found that a conviction exists, for immigration purposes, where an alien has had a formal judgment of guilt entered by a court or, if adjudication of guilt has been withheld, where the following three-pronged test is met: (1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty; (2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed; and (3) a judgment or adjudication of guilty may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding his guilt or innocence of the original charge.

S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993) (quoting *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979)). In determining the plain meaning of a statute, a court "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988). Where Congress' intent is not expressed clearly or subject to an ordinary meaning, a court is to determine a reasonable interpretation of the language that achieves Congress' intent. *See Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782. In so doing, a court may examine the legislative history of the statute. Although legislative statements have less force than the clear and plain language of a statute, such statements are helpful in reaching a reasonable interpretation of the statute. *See, e.g., Weinberger v. Rossi,* 456 U.S. 25, 32–36, 102 S.Ct. 1510, 1516–18, 71 L.Ed.2d 715 (1982). The Court finds that Congress has clearly and unambiguously defined the term "conviction" for immigration purposes and thus has spoken directly to the issue before the Court. *See Matter of PUNU,* 1998 WL 546634 (BIA 1998).

■ To begin, IIRIRA § 101(a)(48)(A) could not be clearer. It provides that "conviction" means "[1] a formal judgment of guilt ... or, if adjudication of guilt has been withheld, where ... the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and ... [2] the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." It is plain that Petitioner meets both prongs: (1) he pleaded guilty to charges of indecency with a minor, and (2) he was fined and placed on eight years of community service, among other forms of punishment.

What is more, Congress has stated expressly that its intent in enacting IIRIRA § 101(a)(48)(A) was to "broaden[ ] the scope of the definition of 'conviction' be-yond that adopted by the Board of Immigration Appeals in *Matter of Ozkok* . . . ." H.R.Conf.Rep. No. 104–828 (1996) ("conference report"). Toward this end, the conference report states that,

> [a]s the [BIA] noted in *Ozkok,* there exist in the various States a myriad of provisions for ameliorating the effects of a conviction. As a result, aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered "convicted" have escaped the immigration consequences normally attendant upon a conviction. *Ozkok,* while making it more difficult for alien criminals to escape such consequences, does not go far enough to address situations where a judgment of guilt or imposition of sentence is suspended, conditioned upon the alien's future good behavior.... In some States, adjudication may be "deferred" upon a finding or confession of guilt, and a final judgment of guilt may not be imposed if the alien violates probation until there is an additional proceeding regarding the alien's guilt or innocence. In such cases the third prong of the *Ozkok* definition prevents the original finding or confession of guilt to be considered a "conviction" for deportation purposes. *This new provision, by removing the third prong of Ozkok, clarifies Congressional intent that even in cases where adjudication is "deferred," the original finding or confession of guilt is sufficient to establish a "conviction" for purposes of the immigration laws.*

*Id.* (Emphasis added).

Similarly, the purpose of IIRIRA § 101(a)(48)(A) was summarized as follows: "[i]t broadens the definition of 'conviction' for immigration law purposes to include all aliens who have admitted to or been found to have committed crimes. This will make it easier to remove criminal aliens, regardless of specific procedures in States for deferred adjudication...." H.R.Rep. No. 104–879 (1997), available in 1997 WL 9288 at *295. Thus, Congress

deliberately modified the definition of conviction to include deferred adjudications and expressly circumvented *Matter of Ozkok.*

Moreover, while deferred adjudication may allow further appellate review under certain circumstances, the Court finds that the possibility of such review is not dispositive. Congress, for purposes of deferred adjudications, specifically has excluded from the definition of "conviction" the third prong of the standard enunciated in *Matter of Ozkok,* which had required that a judgment or adjudication of guilt may be entered if the alien violated probation, without the availability of further proceedings regarding guilt or innocence on the original charge.

Because Congress expressly modified the test delineated in *Matter of Ozkok,* the Court finds that *Martinez–Montoya* — which relied on *Ozkok* —is no longer controlling. *See Matter of PUNU,* 1998 WL 546634. This is fatal to Petitioner's challenge. To be sure, Congress has expressed its intent that the definition of the term, "conviction," includes deferred adjudications, and that the new definition is intended specifically to "make it easier to remove criminal aliens, regardless of specific procedures in States for deferred adjudications. . . ." H.R.Rep. No. 104–879 (1997).

All told, because the Court finds that the deferred adjudication under the applicable Texas statute is a conviction for immigration purposes, the instant petition holds no merit and, consequently, Respondent's Motion to Dismiss should be granted.

Accordingly, **IT IS HEREBY ORDERED** that Respondents' Motion to Dismiss is **GRANTED.**

**IT IS FURTHER ORDERED** that the above-captioned cause is **DISMISSED WITH PREJUDICE.**