**Ex parte Alfredo OLVERA.**

**No. 05–11–01349–CR.**

Court of Appeals of Texas, Dallas.

June 20, 2012.

Discretionary Review Granted March 20, 2013.

■■■■■■■■■■

---

Micah Belden, Sherman, for Appellant.

Andrea L. Westerfeld, Asst. Criminal Dist. Atty., Gregory Willis, John R. Rolater, Jr., McKinney, for Appellee.

Before Justices MORRIS, FRANCIS, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

Appellant Alfredo Olvera pleaded guilty to assault of a public servant. Pursuant to a plea agreement, the trial court deferred adjudicating Olvera's guilt, placed him on community supervision for five years, and assessed a $500 fine. Two years later, Olvera filed an application for a writ of habeas corpus asserting that his guilty plea was involuntary. He also sought an out-of-time appeal. The trial judge denied habeas relief and this appeal followed. We reverse the trial court's order denying habeas relief, vacate the underlying judgment, and remand for further proceedings.

### BACKGROUND

The record shows that after Olvera pleaded guilty to the assault charge and was placed on community supervision, he asked for and got written permission from his supervision officer to travel outside the United States to Mexico with family for the Christmas holidays. When he attempted to return to the United States, however, he was denied reentry and detained by U.S. Customs and Border Protection because he was "identified as an alien who is subject to Removal (Deportation) Proceedings for his/her prior criminal conviction."

Olvera's family hired a lawyer to file an application for a writ of habeas corpus. In the application, Olvera alleged, among

other things, that his guilty plea was involuntary because his trial counsel was ineffective. The trial court conducted three separate hearings on the writ application and denied habeas relief. The court did not make oral or written findings of fact and conclusions of law.

Olvera filed a combined notice of appeal from the judgment rendered following the plea hearing and from the order denying the writ. He asks this Court to allow him to file an out-of-time direct appeal. However, appellant did not file a notice of appeal from the judgment within 30 days after the date his sentence was suspended in open court. *See* TEX.R.APP. P. 26.2. Consequently, we do not have jurisdiction of appellant's direct appeal. *See id.* 25.2(a)(2). In addition, the trial court certified that appellant does not have a right to a direct appeal because his case involved a plea bargain, appellant pleaded guilty, and the punishment did not exceed the punishment recommended by the State and agreed to by appellant. *See* TEX.CODE CRIM. PROC. ANN. art. 44.02 (West 2006). We do, however, have jurisdiction to consider the appeal from the denial of the writ application.

### STANDARD OF REVIEW

■ An applicant for habeas corpus relief must prove his claim by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 665 (Tex.Crim.App.2006). In reviewing a trial court's order denying a writ application, we view the facts in the light most favorable to the trial court's ruling and uphold the trial court's ruling absent an abuse of discretion. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim.App.2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex.Crim.App.2007). We afford almost total deference to the court's determination of the historical facts that

are supported by the record, especially when those facts are based on an evaluation of credibility and demeanor. *Id.* If a trial court does not make explicit findings, we grant deference to implicit findings that support the court's ruling. *Id.* We will reverse the trial court's ruling only if we conclude that it is arbitrary, unreasonable, and made without reference to guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g).

### DISCUSSION

■ In issue two, Olvera contends that his trial counsel was ineffective because counsel did not adequately advise him about the immigration consequences of a guilty plea. Because this issue is dispositive, we address it first.

We evaluate the effectiveness of trial counsel under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hernandez v. State*, 988 S.W.2d 770, 770 (Tex.Crim.App.1999). The appellant bears the burden of proving that counsel was ineffective by a preponderance of the evidence. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999). We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App. 2002). To prevail, the appellant must show (1) counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for counsel's errors, the result would have been different. *See Strickland*, 466 U.S. at 687–88, 694, 104 S.Ct. 2052.

■ In the context of a guilty plea, an appellant must show that his counsel's advice about the guilty plea did not fall within the wide range of competence demanded

of attorneys in criminal cases and that, but for trial counsel's errors, there is a reasonable probability he would not have pleaded guilty and would have insisted on going to trial. *Ex parte Moody,* 991 S.W.2d 856, 858 (Tex.Crim.App.1999).

Olvera testified at the habeas hearing that counsel did not advise him at all about the immigration consequences of a guilty plea and, in fact, told him there were no consequences of pleading guilty. On the other hand, counsel testified that he told Olvera that he could be deported at any time after pleading guilty:

Q You told him—what did you tell him regarding immigration consequences in his case?

A A plea of guilty could result in his deportation, denial of reentry into the country.

Q You didn't tell him that it would result in his deportation?

A I said it could result.

Q Okay. Now what is your understanding of the law when somebody pleads to assault on a public servant even in deferred adjudication?

A If you're on probation for at least over 11 months it's considered in the federal system an aggravated felony and for that there can be a deportation.

. . .

Q Okay. What did you tell Alfredo Olvera regarding the specifics of this charge and what would happen? Did you just give him a standard this will result in your deportation or could result in your deportation as you said earlier?

A I explained to him one year of probation or more is considered in the federal system to be an aggravated felony and for that he could be deported.

. . .

Q Did you ever advise him that when he renewed his [legal permanent resident] card or if he ever attempted reentry into the United States that he would be subject to deportation proceedings?

A I made it clear to him that when he pled guilty to the offense—it was [an] aggravated felony and it was a deportable offense and that he could be deported at any time.

In 2010, the Supreme Court issued its opinion in *Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), in which it explained a criminal defense attorney's duty to advise his client about the potential immigration consequences of a plea. In that case, Padilla pleaded guilty to an offense that subjected him to automatic deportation. The Supreme Court recognized that immigration law is complex and stated that when "the deportation consequences of a particular plea are unclear or uncertain ... a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 1483. But the Court also held that "when the deportation consequence is truly clear, the duty to give correct advice is equally clear." *Id.* The Court held that "constitutionally competent counsel would have advised [Padilla] that his conviction ... made him subject to automatic deportation." *Id.* at 1478, 1486–87. Because counsel did not so advise Padilla, the Court concluded that counsel was not constitutionally competent and that Padilla satisfied the first prong of *Strickland. Id.; see Ex parte Martinez,* No. PD–1338–11, 2012 WL 1868492, at *4– 5 (Tex.Crim.App. May 16, 2012) (not designated for publication) (when deportation and exclusion from this country are automatic consequences of a guilty plea, it is

not enough to advise noncitizen client that he faces the possibility of deportation or exclusion).

It is undisputed that a conviction for an aggravated felony results in automatic deportation or exclusion from the country. 8 U.S.C. § 1227(a)(2)(A)(iii) (2005) (stating that an alien "admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is ... convicted of an aggravated felony"); see Martinez, 2012 WL 1868492, at *4. It is also undisputed that the offense of assault of a public servant is an aggravated felony for federal immigration law purposes. See 8 U.S.C. § 1101(a)(43) (stating that a "crime of violence" is an aggravated felony); 18 U.S.C. § 16(a) (2000) (defining "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another"); Tex. Penal Code Ann. § 22.01(a) (West 2011) (defining "assault" offense to include causing or threatening to cause bodily injury to another). And it is undisputed that when a defendant is placed on deferred adjudication and some form of punishment is assessed, the deferred adjudication is a "conviction" for federal immigration law purposes. Martinez, 2012 WL 1868492, at *4 (citing 8 U.S.C. § 1101(a)(48)(A)).

Because the immigration consequences of a guilty plea to the assault offense in this case were clear, counsel's duty under Padilla and Martinez was to give Olvera clear advice about those consequences. See Padilla, 130 S.Ct. at 1478, 1486–87; Martinez, 2012 WL 1868492, at *4–5; Moody, 991 S.W.2d at 858. The record supports Olvera's argument that counsel did not satisfy his duty to give adequate advice about the immigration consequences. Counsel testified that he told Olvera he could be deported or denied

reentry into this country, not that a guilty plea would result in automatic deportation and denial of reentry. Consequently, we conclude that Olvera satisfied his burden under the first prong of Strickland to show that counsel's performance fell below an objective standard of reasonableness. See Padilla, 130 S.Ct. at 1478, 1486–87.

Under the second prong of Strickland, Olvera must show by a preponderance of the evidence that, but for counsel's errors, he would not have pleaded guilty and would have insisted on a jury trial. At the habeas hearing, Olvera testified that he and his sister asked counsel several times about the immigration consequences of a guilty plea. Olvera testified that if he had known he would be deported or denied reentry into this country by pleading guilty he "would have never pled guilty, ever" and would have gone to trial.

The record shows that Olvera was a legal permanent resident. At Olvera's request, his supervision officer gave him written permission to travel to Mexico with family for the Christmas holidays. Although the record does not show that Olvera was deported,[1] he was denied reentry because of his guilty plea when he tried to return to the United States after the holidays. In his writ application, Olvera argued that because he is a legal permanent resident, he would not have pleaded guilty if he had known he would be deported or denied reentry. In addition, he argued that he would have tried the case because he had "a great defense" to the charge. He argued that he did not know that the officer, who was working as security at a dance hall, was a police officer because the officer approached him from behind. And the officer testified at the habeas hearing that, as he was arresting Olvera, Olvera

---

1. Olvera's counsel states in his appellate brief that Olvera has since been deported.

said, "I didn't know you were the police. I didn't know you were the police."

We conclude that Olvera met his burden to show a reasonable probability that, but for his counsel's erroneous advice, he would not have pleaded guilty and would have insisted on going to trial. *See Moody,* 991 S.W.2d at 857–58. We also conclude that *Padilla* and *Martinez* apply retroactively to the time of the guilty plea. *See Ex parte Tanklevskaya,* 361 S.W.3d 86, 95 (Tex.App.-Houston [1st Dist.] 2011, pet. filed); *Ex parte De Los Reyes,* 350 S.W.3d 723, 729 (Tex.App.-El Paso 2011, pet. granted); *accord United States v. Orocio,* 645 F.3d 630, 641 (3d Cir.2011); *but see United States v. Amer,* 681 F.3d 211, 214 (5th Cir.2012) (holding *Padilla* does not apply retroactively); *Chaidez v. United States,* 655 F.3d 684, 694 (7th Cir.2011) (same), *cert. granted,* —— U.S. ——, 132 S.Ct. 2101, 182 L.Ed.2d 867, 2012 WL 1468539, at *1 (2012).

We sustain Olvera's second issue and conclude that the trial court abused its discretion by denying habeas relief on the ground that trial counsel failed to adequately advise Olvera about the immigration consequences of a guilty plea. Because of our resolution of this issue, we do not need to address the remaining issues.

### CONCLUSION

We reverse the trial court's order denying Olvera's application for a writ of habeas corpus, vacate the underlying judgment, and remand to that court for further proceedings.