COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS



§

§

EX PARTE MANUEL TORRES,   §

§

§

No. 08-12-00244-CR

Appeal from the

34th Judicial District Court

of El Paso, Texas

(TC# 20110D01278)

## **O P I N I O N**

Manuel Torres appeals the trial court's denial of his writ of habeas corpus application seeking reversal of his guilty plea to one count of felony possession of a controlled substance and one count of robbery. In his sole issue on habeas review, Appellant, a Mexican national with lawful permanent resident ("LPR") status in the United States, complains that his trial counsel rendered constitutionally ineffective assistance by telling him that pleading guilty to the charges "could result in his deportation" instead of informing him that under the Immigration and Nationality Act, those offenses constituted aggravated felonies subjecting him to near-certain automatic removal[1] from the United States. We reverse and render.

---

[1] Although the case law refers to the procedure by which an alien is expelled from the United States as "deportation," *see, e.g., Ex parte De Los Reyes*, 392 S.W.3d 675, 678 (Tex.Crim.App. 2013)("the written admonishment was sufficient to give Applicant notice that a plea of guilty could have resulted in deportation."), such proceedings commenced after April 1, 1997, are properly referred to as removal proceedings. *See Glossary: Deportation*, U.S. DEP'T OF HOMELAND SEC., U.S. CITIZENSHIP & IMMIGRATION SERVS.,

**BACKGROUND**

Prior to his arrest on the charges at issue in this appeal, Appellant was a resident alien living in El Paso, Texas. He entered the United States presumably without inspection at the age of two or three, when his parents brought him into the country. Appellant has spent most of his life in the United States and is a native English speaker. On May 24, 2006, Appellant received LPR status, according to his affidavit.

Appellant did not testify at the habeas corpus hearing because he was in United States Department of Homeland Security, Immigration and Customs Enforcement division ("ICE") custody.[2] However, in an affidavit submitted to the trial court as part of his habeas application, Appellant stated that he met with an employee from the El Paso County Public Defender's Office while in custody following his arrest, and that he gave her his "biographic information, education, legal status in the country, and the facts of the case." He later met with an attorney from the Public Defender's Officer, who Appellant contended explained the possibility of probation to him, but never the immigration consequences of a plea. After meeting with the original intake employee again near his court date, Appellant finally met with a second attorney, his assigned defense counsel for the case, who "explained how probation works and also about the alternative of doing time on the cocaine charges." At a bond hearing, Appellant received bond and his attorney told him that his father and brother were responsible for ensuring

---

http://www.uscis.gov/tools/glossary/deportation (last visited Feb. 2, 2014)(noting that Congress consolidated deportation proceedings (which expel an alien already present in the United States) and exclusion proceedings (designed to deny an alien entry at the United States border) into one general catch-all proceeding now known as "removal"). "Deportability" is a legal state rendering an "alien[] in and admitted to the United States . . . subject to removal[.]" *Id.* For purposes of harmonizing legal terminology between the courts of this State and the immigration courts, we refer to deportation proceedings as removal proceedings in this opinion.

[2] "[W]hile a state court may entertain a hearing on an applicant's habeas-corpus application filed under Chapter 11 of the Texas Code of Criminal Procedure, it has no authority to compel an inmate's release from federal custody for purposes of attending that hearing." *In re State of Texas*, 08-10-00059-CR, 2010 WL 597138 (Tex.App.--El Paso Feb. 19, 2010, no pet.)(orig. proceeding, not designated for publication).

Appellant complied with the bond. However, Torres continued to be detained until he made restitution for an insufficient check he had written in New Mexico.

Appellant said that his attorney visited him during the detention, and "said everything was o.k. and not to worry and that I was going to get deferred probation, and explained to me that it could eventually be taken off my record." Appellant maintained that he did not meet with his attorney at any time from the date of his release until the date of plea hearing. Appellant stated that shortly before the plea hearing, he again met with his attorney, who told him "about deferred probation for ten years for the robbery charge and 5 years for possession of cocaine charge," with a burglary and marijuana possession charge to be dismissed. Appellant further stated that "I never went over the plea documents with [my] attorney . . . he just told me to sign them and I did."

Several days after the plea hearing, Appellant was re-arrested on separate charges. Appellant said that his attorney told him that he would try to get the charges he was being held on consolidated into the charges he previously pled to. When Appellant asked his attorney "what ICE was because [he] had been told that [he] had an ICE hold," his attorney explained that immigration authorities had placed the hold "because [he] had pleaded" and advised him to contact an immigration attorney. Appellant maintained that "the first and only time that [his] attorney . . . ever told [him] about an problem with immigration" was during this meeting, after he had pleaded guilty to the charges.

At the habeas hearing, the State called Appellant's defense attorney who handled the plea. Defense counsel testified that he has been an attorney specializing in criminal law since 1985, and that he had been assigned Appellant's case by the Public Defender's Office. Defense counsel confirmed that Appellant met with an intake worker and another attorney before he was

assigned to the case. Defense counsel also testified that he had met with Appellant once at the bond hearing, once to discuss the bad check hold arising from a purportedly erroneous extradition attempt from New Mexico, once at the plea hearing, and once after his plea relating to his second arrest on other charges. Defense counsel disputed Appellant's contention that he "put the plea papers in front of him and just said, Sign them," maintaining that he went through the plea papers "paragraph by paragraph" to ensure that Appellant got "the gist of" each paragraph, that he discussed Appellant's immigration status with him at the plea hearing and probably during the first meeting, and that Appellant was "definitely . . . aware of the possibility of immigration consequences of pleading guilty to two felony offenses." He stated that his specific advice to Appellant was to hire an immigration attorney to warn him of the possible removal consequences.

On cross-examination, defense counsel admitted that he spent between ten and fifteen minutes reviewing the plea papers with Appellant and "[p]robably less than a minute" explaining the immigration consequences section of the plea papers. Defense counsel acknowledged that the trial court did not admonish Appellant on the record about immigration consequences of the plea. He also admitted that he had never independently reviewed the Immigration and Nationality Act and did not know what constituted deportable offenses under the Act other than what he learned "at seminars." Appellate counsel also questioned defense counsel on the specific advice he gave Appellant and on defense counsel's knowledge of the specific consequences of pleading guilty to an aggravated felony:

> Q. And you testified that your specific instruction to him was, Seek immigration counsel; you could be deported because these are felonies.
>
> A. Yes. I didn't make any distinction between the robbery and the possession case because my understanding of the law is they're

4

both considered aggravated felonies and it could result in his deportation, either one on its own.

.    .    .

Q.    So, therefore, you are aware that they were – if they were aggravated felonies, that he is for certain going to be in deportation proceedings?

A.    That has not been my experience.

Q.    That has not been your experience?

A.    No.  I see lots of people plead to aggravated felonies and don't end up in deportation proceedings.

.    .    .

Q.    [Y]ou are aware that an aggravated felony is defined as a crime that is deportable automatically, that person is deportable if they plead guilty or convicted [sic] of that offense?

A.    That's what – you know, I'm not sure what the distinction you're making is because certainly that's the definition of these kinds of felonies or misdemeanors that can get you deported, but not everyone who pleads guilty to those offenses gets deported.

Q.    But that wasn't my question.

.    .    .

Q.    [Y]our analysis of an aggravated felony, then, is you don't know if the person is going to be in removal proceedings, is what you are saying, from your experience?

A.    Right.  I have seen many cases where they pled guilty to felonies that get them deported and they come back and they're still not deported.

.    .    .

Q.    Okay.  You never told Mr. Torres that *he will be in deportation proceedings* if he pleads?  [Emphasis added].

A.    I did not use that terminology, no.

5

The trial court found that the testimony of Appellant and defense counsel conflicted, and resolved any discrepancies in defense counsel's favor. The trial court also held that defense counsel fully advised Appellant of the immigration consequences of his plea in compliance with constitutional requirements.

## DISCUSSION

In his sole issue on appeal, Appellant contends that the trial court abused its discretion by refusing to grant a writ of habeas corpus because his trial counsel failed to properly admonish him of the immigration consequences of his plea deal, thereby rendering his plea involuntary as a result of ineffective assistance of counsel. We agree.

### *Standard of Review*

The applicant in a habeas corpus proceeding bears the burden of proving he is entitled to post-conviction relief by a preponderance of the evidence. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex.Crim.App. 2002). We review the trial court's grant or denial of habeas corpus for abuse of discretion, viewing the facts in the light most favorable to the trial court's ruling and deferring to the trial court in matters involving a determination of credibility or demeanor. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex.Crim.App. 2006); *Ex parte Cisneros,* No. 08-11-00180-CR, 2013 WL 1281995, at *3 (Tex.App.--El Paso Mar. 28, 2013, no pet.)(not designated for publication).

The Sixth Amendment provides a defendant with the constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel renders constitutionally ineffective assistance warranting reversal where (1) his performance fell below an objective standard of reasonableness, and (2) that the defendant suffered prejudice, i.e., that there was a reasonable probability that but for the actions

6

of defense counsel, the outcome of proceedings would be different. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. On habeas review, an applicant must establish both *Strickland* prongs by a preponderance of the evidence. *Ex parte Carpio-Cruz*, 08-10-00240-CR, 2011 WL 5460848, at *7 (Tex.App.--El Paso Nov. 9, 2011, pet. granted)(not designated for publication), *rev'd on retroactivity grounds*, PD-1872-11, 2013 WL 1149964 (Tex.Crim.App. Mar. 20, 2013)(not designated for publication).

### *Deficient Performance*

In addressing the first prong of *Strickland*, Appellant maintains that defense counsel did not clearly and properly warn him of the impending immigration consequences of his plea, as required by the Sixth Amendment. We agree.

In discharging his duty to effectively represent his client at the pleading stage, defense counsel must advise a non-citizen client of the adverse immigration consequences a guilty plea may carry. *Padilla v. Kentucky*, 559 U.S. 356, 369, 120 S.Ct. 1473, 1483, 176 L.Ed.2d 284 (2010). The scope of the *Padilla* duty hinges on how likely it is that a plea agreement will result in removal proceedings. "When the law is not succinct and straightforward" on that issue, defense counsel discharges his *Padilla* duties by "advis[ing] a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id*. However, "when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear." *Id*.

Texas courts applying *Padilla*, including this Court, have held that where the immigration consequences of a plea are a "virtual certainty," defense counsel has a mandatory duty to explicitly state what those consequences will be. *See Ex parte Ramirez*, 08-11-00073-CR, 2012 WL 3113140, at *3-*4 (Tex.App.--El Paso Aug. 1, 2012, no pet.)(not designated for

publication); *Ex parte Carpio-Cruz*, 2011 WL 5460848, at *7; *see also Martinez v. State*, PD-1338-11, 2012 WL 1868492, at *4 (Tex.Crim.App. May 16, 2012)(not designated for publication), *overruling on retroactivity grounds recognized on remand sub nom Ex parte Martinez*, 13-10-00390-CR, 2013 WL 2949546, at *2 (Tex.App.--Corpus Christi June 13, 2013, no pet.)(mem. op., not designated for publication); *Ex parte Tanklevskaya*, 361 S.W.3d 86, 96-97 (Tex.App.--Houston [1st Dist.] 2011, pet. granted), *rev'd on retroactivity grounds*, 393 S.W.3d 787 (Tex.Crim.App. 2013)(recognizing duty to explicitly state that client will be deemed inadmissible under 8 U.S.C. 1182(a)(2)(A)(i)(II)(West 2008) for pleading guilty to "violation of . . . any law . . . relating to a controlled substance . . ." because immigration consequences were clear and presumptively mandatory); *Ex parte Olvera*, 394 S.W.3d 572, 576 (Tex.App.--Dallas 2012, pet. granted), *rev'd on retroactivity grounds*, PD-1215-12, 2013 WL 1149926 (Tex.Crim.App. Mar. 20, 2013)(not designated for publication)(counsel has duty to inform client that pleading guilty to aggravated felony will result "in automatic deportation or exclusion from the country" under 8 U.S.C. 1227(a)(2)(A)(iii)(West 2005)).[3]  Merely stating that removal proceedings *could* ensue after a guilty plea to an aggravated felony or drug offense is ineffective in mandatory removal cases; counsel must clearly state that pleading to the offense *will* result in removal.  *Ex parte Ramirez*, 2012 WL 3113140, at *3-*4; *Ex parte Carpio-Cruz*, 2011 WL 5460848, at *7; *Ex parte Olvera*, 394 S.W.3d at 576 (stating that pleading to aggravated felony "could" result in removal is constitutionally ineffective); *Ex parte Romero*, 351 S.W.3d 127, 131 (Tex.App.--San Antonio 2011, pet. granted), *rev'd on retroactivity grounds*, 393 S.W.3d 788

---

[3] Prior to the United States Supreme Court's decision in *Chaidez v. United States*, --- U.S. ---, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013), Texas courts routinely applied the *Padilla* standard retroactively to convictions made final before March 31, 2010 (the date of the decision in *Padilla* was announced).  However, in *Chaidez*, the majority held that *Padilla* announced a new rule of constitutional law inapplicable in habeas challenges to convictions that became final prior to March 31, 2010.  *Id*. at 1113.  In light of *Chaidez*, the Court of Criminal Appeals subsequently decided that *Padilla* also did not apply retroactively under the Texas Constitution.  *Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex.Crim.App. 2013).  Although many of the cases cited herein were reversed on retroactivity grounds, we find their reasoning to be sound and rely on these cases as persuasive authority.

(Tex.Crim.App. 2013); *Salazar v. State*, 361 S.W.3d 99, 103 (Tex.App.--Eastland 2011, no pet.)(use of terms "likelihood" and "possibility" of removal when conviction would result in "certain deportation" rendered counsel's advice ineffective).

Here, trial counsel admitted on cross-examination that he told Appellant that removal was a possibility and advised him to consult an immigration lawyer. Given that a cursory check of the Immigration and Nationality Act shows that robbery and possession of cocaine are both automatically deportable offenses under immigration law, *see* 8 U.S.C.A. § 1101(a)(43)(G)(West 2005)("theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment at least one year" is aggravated felony); 8 U.S.C.A. § 1227(a)(2)(B)(i)(West 2005)(state law conviction "relating to a controlled substance . . . other than a single offense involve possession for one's own use of 30 grams or less of marijuana" is deportable offense), and given that deferred adjudication has the same effect for immigration purposes as a conviction, *see Garnica-Vasquez v. Reno*, 40 F.Supp.2d 398, 405-06 (W.D.Tex. 1999), counsel had a duty to stress that pleading guilty to those crimes and receiving deferred adjudication would absolutely result in Appellant's imminent removal from the United States. *Padilla*, 559 U.S. at 369, 130 S.Ct. at 1483.

At the habeas hearing, trial counsel relayed his belief that even where a defendant pleads guilty to an automatically deportable offense, removal is uncertain because ICE has not removed people he knows personally who have pleaded guilty to such offenses. But counsel's constitutional duty to inform his client that his removal is a virtual legal certainty does not wane merely because counsel believes the probability of actual removal is uncertain based on his past experience and ICE's enforcement priorities. *Padilla,* 559 U.S. at 359, 130 S.Ct. at 1478 (counsel ineffective in advising client he "did not have to worry about immigration status since

9

he had been in the country so long"). Nor is counsel's ignorance of mandatory deportation consequences under the Immigration and Nationality Act excused by immigration law's complexity, as "we have held counsel accountable for knowledge, or the ability to attain knowledge, of relevant legal matters that are neither novel nor unsettled." *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex.Crim.App. 1999). The list of deportable offenses, although extensive, is clearly set out at 8 U.S.C.A. § 1227(a), and the list of 21 types of aggravated felonies triggering automatic removal is set out at 8 U.S.C.A. § 1101(a)(43). *Padilla* imposes a duty on defense counsel to know what these crimes are and to advise a client that a plea to any of these crimes will make him or her presumptively deportable. *Padilla*, 559 U.S. at 369, 130 S.Ct. at 1483. Counsel's admitted failure to even consult the Immigration and Nationality Act list in advising his client is deeply troubling, particularly in light of counsel's status as a public defender practicing in an area located on the United States-Mexico border with a high immigrant population.

Trial counsel's admission that he did not explicitly state that Appellant's post-plea removal was a legal certainty, coupled with his admitted failure to research which offenses constituted aggravated felonies under the Immigration and Nationality Act, constitute ineffective assistance in an aggravated felony and narcotics case as a matter of law. The trial court abused its discretion in finding otherwise.

### *Prejudice*

We next address whether Appellant was prejudiced by counsel's deficient performance at the plea stage.

In *Padilla*, the Supreme Court only addressed the deficient performance prong of *Strickland*, leaving the lower courts to formulate their own approaches to the issue of prejudice.

10

559 U.S. at 360, 130 S.Ct. at 1478. While the State points us to a four-factor approach to prejudice that our sister circuit in Houston has taken that assesses a defendant's probability of success at trial, *Ex parte Murillo*, 389 S.W.3d 922, 928-31 (Tex.App.--Houston [14th Dist.] 2013, no pet.), *abrogated on retroactivity grounds by Ex parte Chaidez*, 133 S.Ct. at 1113, and *Ex parte De Los Reyes*, 392 S.W.3d at 679, we have previously rejected a solely merits-based prejudice analysis, recognizing that "[d]eprivation of a trial" stemming from a *Padilla* violation "is a structural defect, which amounts to a serious denial of the entire judicial proceeding itself, and it demands a presumption of prejudice." *Ex parte De Los Reyes*, 350 S.W.3d 723, 730 (Tex.App.--El Paso 2011, pet. granted), *rev'd on retroactivity grounds*, 392 S.W.3d 675 (Tex.Crim.App. 2013). "The focus of the prejudice inquiry . . . is whether the defendant was deprived of a particular proceeding by counsel's deficient performance, not whether the outcome of that proceeding would have been favorable to the defendant." *Id*. at 731. "Therefore, the defendant must demonstrate that but for counsel's performance, he would have availed himself of the proceeding in question." *Id.* In assessing prejudice, "we are to consider the circumstances surrounding [the] guilty plea and the gravity of the advice that [the defendant] did not receive as it pertained to [the defendant's] plea determination." *Ex parte Tanklevskaya*, 361 S.W.3d at 97.

Appellant met his burden in establishing prejudice. Appellant stated in his affidavit that he accepted the plea deal because trial counsel advised him that he would not have to go to jail and that the deferred adjudication meant the charges would eventually be dismissed. The fact that trial counsel would explain those circumstances but did not inform him that the plea would subject Appellant to mandatory removal weighs heavily in our analysis, particularly considering that prejudice is presumed. *Id.* Appellant was also an LPR, a native English speaker, and has resided in the United States since he was a small child, all of which weigh in favor of a prejudice

11

finding. *See Ex parte Ramirez*, 2012 WL 3113140, at \*4 (taking residence in the United States since early childhood and ties to home country as prejudice factors). Finally, Appellant sufficiently alleged that he would have taken alternate courses of action in his habeas corpus petition, as required to establish prejudice. *See Hill v. Lockhart*, 474 U.S. 52, 60, 106 S.Ct. 366, 371, 88 L.Ed.2d 203 (1985)(habeas petition must contain allegations that applicant would have pursued other options to satisfy prejudice prong of *Strickland*). Specifically, Appellant contended before the trial court and this Court that as an LPR, he would have been eligible for immigration relief and citizenship through cancellation of removal[4] on May 24, 2013, when he would have resided lawfully in the United States for seven years. Appellant maintains that his plea deal directly led to him being placed in removal proceedings before he was timely eligible for cancellation of removal, and that the offenses he pled to now preclude any discretionary immigration relief at all. Had he received proper counsel, Appellant claims he would have delayed the plea until he was statutorily eligible for cancellation of removal and sought an immigration-neutral plea agreement, or alternatively, gone to trial, moved to suppress the narcotics, and fully litigated that issue.

In viewing the totality of the circumstances, we find that Appellant has met his burden in establishing prejudice. *Ex parte De Los Reyes*, 350 S.W.3d at 730. Such prejudice could not be cured by the one paragraph admonishment in the plea papers stating that the plea "may" result in his removal. *Id.* at 731; *Ex parte Tanklevskaya*, 361 S.W.3d at 99.

---

[4] Cancellation of removal is an affirmative defense in removal proceedings that a lawful permanent resident may assert to defeat removal, provided he:

    1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
    2) has resided in the United States continuously for 7 years after having been admitted in any status, and
    3) has not been convicted of any aggravated felony.

8 U.S.C.A. § 1229b (West 2008). The continuous residency clock terminates upon ICE's service of an immigration indictment known as a Notice to Appear, or when the alien has committed an offense rendering him deportable, whichever occurs first. 8 U.S.C.A. § 1229b(d)(1).

Appellant's sole issue is sustained.  We reverse the trial court's order denying writ of habeas corpus and render judgment granting the writ of habeas corpus.


March 21, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)